AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

Sep 11 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ ClaudiaCarranza        DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

White Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400020701 Item: 002

)
)
)
)
)
)

Case No.     **2:24-mj-08811**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ❑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

- ❑ Continued on the attached sheet.
- ❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:     09/11/2024

*Judge's signature*

City and state:   El Centro, California          HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**        White Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400020701 Item: 002
Seized from Luis Enrique GUZMAN
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 1, 2024, up to and including September 1, 2024, and is limited to the following:

a.    tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.    tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.    tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.    tending to identify the user of, or persons with control over or access to, the Target Device;

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

## AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

### INTRODUCTION

1.    I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**         White Apple iPhone
              Model: Unknown
              Seized as FP& F: 2024255400020701 Item: 002
              Seized from Luis Enrique GUZMAN
              **(Target Device #1)**

**A-2:**         Black Honor Cellphone
              Model: Unknown
              Seized as FP& F: 2024255400020701 Item: 003
              Seized from Eduardo NIEBLA-Amador
              **(Target Device #2)**

as further described in Attachments A-1 to A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.    The requested warrant relates to the investigation and prosecution of Luis Enrique GUZMAN (GUZMAN) for transportation of illegal aliens Eduardo NIEBLA-Amador (NIEBLA) and Agustin RAMIREZ-Mendoza (RAMIREZ) (collectively, the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from GUZMAN and Material Witness Eduardo NIEBLA-Amador on or about August 31, 2024, incident to the arrest of GUZMAN and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not

1

set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

### EXPERIENCE AND TRAINING

4.      I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.      I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.      Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers

and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones

that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.     tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.     tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.     tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

10.     This complaint is based upon statements in the investigative report by Border Patrol Agent (BPA) R. Fuentes that on August 31, 2024, Luis Enrique GUZMAN (GUZMAN), a United States Citizen, was arrested near Calexico, California while transporting two non-citizens in violation of Title 8, United States Code, Section 1324.

11.     On August 31, 2024, Border Patrol Agent (BPA) R. Fuentes, was assigned to the Calexico Border Patrol Stations Area of Responsibility.  This area of the border region consists of uninhabited desert with Interstate 8 (I-8) running through it. Interstate 8 is

approximately .5 miles north of the United States/Mexico International Boundary Fence (IBF), approximately 30 miles east of the Calexico, California West Port of Entry. The main east to west road in this area is I-8 which parallels the international border. This area is consistently used by smugglers to smuggle illegal aliens further into the United States due to its proximity to the border and quick access to the highway.

12.    At approximately 3:04 a.m., BPA Fuentes observed a vehicle, later identified as a Jeep Wrangler, parked on the shoulder of the eastbound lanes of interstate 8 (I-8) near the Winter haven 31-mile sign. BPA Fuentes notified Remote Video Surveillance System (RVSS) operators and agents in the field via his vehicle service radio. RVSS operators relayed to agents via radio communications that they observed two individuals running north of the IBF towards the Jeep. RVSS relayed that they observed one individual enter the Jeep and observed it drive eastbound on I-8. The second individual stayed behind and was unable to enter the Jeep. BPA Fuentes positioned himself behind the Jeep and activated his service vehicle's lights and sirens. The Jeep began to increase its speed and failed to yield. BPA Fuentes relayed the information via radio communications. Shortly after, the Jeep stopped on the shoulder of the eastbound lanes near Midway Campgrounds as soon as BPA Fuentes positioned himself behind the Jeep the driver accelerated and sped off.

13.    BPA Fuentes continued to follow the vehicle as it continued eastbound on I-8. At this time, Yuma BPA T. Gardner, positioned himself at the "A7 Bridge" ready to deploy his Vehicle Immobilization Device (VID) on the Jeep. As the Jeep was approaching the A7 Bridge, BPA Gardner deployed his VID and successfully punctured the Jeeps tires. The Jeep continued eastbound on I-8 after the VID deployment for approximately 10 miles until ultimately exiting the Sidewinder exit and stopping on the offramp.

14.    Border Patrol Agents positioned themselves behind the vehicle and ordered the driver and passengers to exit the vehicle. The passenger, later identified as Eduardo NIEBLA-Amador, exited the rear passenger door and was placed under arrest. Shortly after, GUZMAN was arrested for 8 USC 1324. The subject that was unable to enter the Jeep, later identified as Agustin RAMIREZ-Mendoza, was subsequently arrested and

transported to the Calexico Border Patrol Station for further processing along with NIEBLAS and GUZMAN.

15.     Material Witness RAMIREZ-Mendoza stated he was born in Chiapas, Mexico. RAMIREZ stated he is a citizen of Mexico and lives in Chiapas. RAMIREZ stated he does not have documents to be in the United States legally. RAMIREZ stated he arrived in Mexicali, Baja California about 15 days ago. RAMIREZ stated his family made smuggling arrangements when he arrived to Mexicali and was going to pay $12,000 to be smuggled to Los Angeles, California. RAMIREZ stated he walked to the border fence from a ranch house and jumped the fence.

16.     Material Witness Eduardo NIEBLA-Amador stated he was born in Mexicali, Mexico and is a citizen of Mexico. NIEBLA stated he lives in Mexicali, Mexico and does not possess the proper documentation to be in the Unted States legally. NIEBLA stated he made arrangements with an unknown individual, which he knows as "Chaparro" to be smuggled into the United States for $8500.00 and was headed to Indio, California. NIEBLA stated he and 2 other individuals were taken to the border fence in a Ram truck. NIEBLA stated they were instructed to walk towards the road and wait there until a vehicle stopped to pick them up. NIEBLA stated once they made it to the road, he observed a red Jeep that was stopped near the area they were instructed to run to. NIEBLA stated once he was able to get into the Jeep, the driver instructed him in the Spanish language to get in and duck down. NIEBLA stated the driver told him he was going to stop and asked NIEBLA to act like he was going to get off. NIEBLA stated the driver didn't make a complete stop, so he did not do as the driver told him. NIEBLA stated the driver appeared to get even angrier and proceeded to keep driving at a high rate of speed. NIEBLA stated he was not wearing a seat belt. NIEBLA stated he feared for his life. NIEBLA was shown a six-photo lineup. NIEBLA was able to identify the driver in the photo lineup.

17.     During a search incident to arrest of GUZMAN and the Material Witnesses, two cellphones were found: a white Apple iPhone (Target Device #1) was retrieved during an inventory search and located in a rear toolbox. GUZMAN claimed ownership of this

cellphone.  A black Honor cellphone (Target Device #2) was found on NIEBLA's person and NIEBLA claimed ownership of this cellphone. All cellphones were seized as evidence.

18.     I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this, I respectfully request permission to search the Target Devices for data beginning on August 1, 2024, up to and including September 1, 2024, the day after the arrest of GUZMAN, and the Material Witness.

## METHODOLOGY

19.     It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored

that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20.    Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21.    Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

8

# CONCLUSION

22.     Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that GUZMAN and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by GUZMAN, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*

Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 11th day of September, 2024.

_____  2:49 p.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          White Apple iPhone
              Model: Unknown
              Seized as FP& F: 2024255400020701 Item: 002
              Seized from Luis Enrique GUZMAN
              **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-2**
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          Black Honor Cellphone
              Model: Unknown
              Seized as FP& F: 2024255400020701 Item: 003
              Seized from Eduardo NIEBLA-Amador
              **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-2 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of August 1, 2024, up to and including September 1, 2024, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Device;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.